UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHARLES L. HARLESS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )      CAUSE NO. 1:10-CV-00361 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## <u>OPINION AND ORDER</u>

Plaintiff Charles Harless appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I.  PROCEDURAL HISTORY

Harless applied for SSI on June 30, 2006, alleging that he became disabled as of January 1, 2006. (Tr. 9, 90-92.)  The Commissioner denied his application initially and upon reconsideration, and Harless requested an administrative hearing. (Tr. 37-45.)  On February 19, 2009, Administrative Law Judge ("ALJ") Yvonne Stam conducted a hearing at which Harless, who was represented by counsel, and a vocational expert ("VE") testified. (Tr. 16-36.)

On May 28, 2009, the ALJ rendered an unfavorable decision to Harless, concluding that he was not disabled despite the limitations caused by his impairments because he could perform

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

a significant number of jobs in the national economy. (Tr. 9-15.)  The Appeals Council denied

his request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-

5.)  Harless filed a complaint with this Court on October 15, 2010, seeking relief from the

Commissioner's final decision. (Docket # 1.)  He raises just one argument in his appeal—that the

ALJ improperly discounted the credibility of his subjective symptom testimony. (Opening Br. of

Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 13-17.)

## II.  FACTUAL BACKGROUND[2]

### A.  Background

At the time of the ALJ's decision, Harless was fifty-eight years old, had an eleventh

grade education, and possessed work experience as a pallet repairer. (Tr. 90, 122, 173.)  He

alleged that he became disabled as of January 1, 2006, due to depression and emphysema.

(Opening Br. 2.)

At the hearing, Harless testified that he lives by himself and independently performs his

personal care and most of his household tasks. (Tr. 19.)  His sister and daughters sometimes do

his shopping, as he does not like to be around the public. (Tr. 21.)  He stated that due to his

emphysema he becomes short of breath with activity, such as walking the dog or mowing the

lawn, causing him to rest intermittently during the tasks. (Tr. 19.)  He explained that his

shortness of breath worsens with heat or humidity, but is not affected by tasks such as lifting.

(Tr. 19-20.)

Harless further testified that he takes medication for depression and that he has good days

and bad days. (Tr. 22-23.)  He also stated that he has trouble sleeping. (Tr. 28.)  He spends his

---

[2] In the interest of brevity, this opinion recounts only the portions of the 288-page record necessary to the decision.

days performing basic household tasks, napping, caring for his pets, walking the dog, mowing

the lawn, and watching television. (Tr. 28-29.)

### B.  Summary of the Medical Evidence

On September 12, 2006, Wayne Von Bargen, Ph.D., evaluated Harless, who reported a

history of depression. (Tr. 182-83.)  Dr. Von Bargen found that his history and current

presentation suggested chronic depression of mild to moderate severity, probably consistent with

a dysthymic disorder, and that his primary limitations revolved around limited endurance due to

his breathing problems. (Tr. 182.)  Dr. Von Bargen noted that Harless's cognitive functioning

was intact and that he was able to adequately care for himself, though he depended upon his

daughters to help with strenuous or prolonged tasks. (Tr. 182.)  He assigned Harless a Global

Assessment of Functioning ("GAF") score of 65, reflective of a mild impairment.[3]

The following day, Joseph Pressner, Ph.D., a state agency psychologist, reviewed

Harless's record and concluded that he did not have a severe mental impairment. (Tr. 187-99.)

More specifically, Dr. Pressner opined that Harless had mild restrictions in daily living tasks and

mild difficulties in maintaining concentration, persistence, or pace, but no difficulties in

maintaining social functioning. (Tr. 197.)  Dr. Pressner's opinion was later affirmed by a second

state agency psychologist. (Tr. 237.)

On October 9, 2006, Dr. Venkata Kancherla examined Harless at the request of Social

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000).  A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id*.  A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*  And, a GAF score of 61 to 70  reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." *Id*.

3

Security. (Tr. 201-02.)  Harless told Dr. Kancherla that he gets short of breath on exertion and that some days are worse than others. (Tr. 201-02.)  Dr. Kancherla noted Harless's history of chronic obstructive pulmonary disease and depression and that he was currently taking medication for such conditions; otherwise, his physical exam was normal. (Tr. 202.)

On October 19, 2006, Harless underwent a psychological evaluation at Park Center upon referral from the Department of Child Services as a result of child neglect allegations with respect to his seventeen-year-old daughter. (Tr. 224-31.)  He told the examiner that his emphysema leaves him feeling exhausted and that he copes by lying down and taking a nap between activities; he also stated that he was depressed. (Tr. 227.)  During the examination, Harless evidenced poor judgment with flat mood and affect and problems with concentration and remote memory. (Tr. 227-28.)  He completed the Personality Assessment Inventory in a "marginally valid fashion"; that is, he presented with certain patterns or combinations of features that are atypical in clinical populations, but relatively common among individuals feigning mental disorder. (Tr. 228.)  The examiner therefore noted that the clinical hypotheses in his report should be reviewed with these considerations in mind. (Tr. 228.)  Harless had clinical elevations on the depression and somatic scales as well as a borderline elevation on the aggression scale. (Tr. 228.)  He demonstrated "an unusual degree of concern about health matters and probable impairment from somatic symptoms." (Tr. 229.)  His profile suggested that he sees little need for change in his behavior and that he was not interested in attending therapy. (Tr. 229.)

On November 16, 2006, Dr. J. Hunt, a state agency physician, reviewed Harless's record and concluded that he did not have a severe physical impairment. (Tr. 206.)  His finding was

later affirmed by a second state agency physician. (Tr. 238.)

On December 10, 2006, John Musgrave, Psy.D., of Park Center diagnosed Harless with depressive disorder NOS and alcohol dependence, sustained full remission, and assigned a GAF of 55, reflective of a moderate impairment. (Tr. 222.)  He noted that Harless's situational stressors were likely aggravating his reported long-standing difficulties with depressed mood, which appeared dysthymic in nature. (Tr. 221.)  Dr. Musgrave thought that, despite medication management to control his symptoms, Harless was experiencing some impairment at least a few days a month, with depressed mood continuing most days of the week. (Tr. 221.)

On May 22, 2007, Karen Lothamer, CNS, saw Harless at Park Center, and her report was countersigned by Dr. Larry Lambertson. (Tr. 261-64.)  Harless reported that his medication was not working for him as it had in the past and that he needed help with his depression. (Tr. 264.) He presented with a flat affect and anxious thought content. (Tr. 263.)  He felt unmotivated and had difficulty sleeping and doing some of his daily living activities; he denied any suicidal ideation. (Tr. 263.)  Harless was diagnosed with "major depression, recurrent, moderate," and "alcohol dependence, sustained with full remission," and was assigned a current GAF of 50, reflective of a serious impairment, with a past GAF of 55. (Tr. 264.)

On October 22, 2007, Dr. Matthew Hess diagnosed Harless with hypothyroidism. (Tr. 248.)  Dr. Hess saw Harless again in July 2008 to complete some paperwork for the Township Trustee, and he noted that he did not think Harless's depression was very well controlled. (Tr. 247.)  In October 2008, Harless reported that his breathing was doing much better since starting on Symbicort. (Tr. 244.)  He stated that once or twice a day he experienced "a little bit of shortness of breath," but usually after physical activity. (Tr. 244.)  Dr. Hess completed several

5

forms for the Township Trustee indicating that Harless could not work. (Tr. 239-42.)

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3).  The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id.*  Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.*

### IV.  ANALYSIS

#### A.  The Law

Under the Act, a plaintiff is entitled to SSI if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from

6

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

In determining whether Harless is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required her to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. § 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id.* at 885-86.

### B.  The ALJ's Decision

On May 28, 2009, the ALJ rendered her opinion. (Tr. 9-15.)  She found at step one of the five-step analysis that Harless had not engaged in substantial gainful activity since his application date and, at step two, that his depression and emphysema were severe impairments. (Tr. 11.)  At step three, she determined that Harless's impairment or combination of impairments did not meet or equal a listing. (Tr. 12.)  Before proceeding to step four, the ALJ found Harless's

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945.  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 416.920(e), 416.945(a)(5).

subjective complaints not credible to the extent they were inconsistent with the following RFC:

> [T]he claimant retains a residual functional capacity to perform . . . work at all
> exertional levels but he should avoid concentrated exposure to pulmonary irritants
> or extreme heat and cold temperatures.  He would be limited to work not
> requiring a fast pace and involving no more than brief and superficial contact with
> supervisors and coworkers and no contact with the general public.

(Tr. 13.)

Based on this RFC and the VE's testimony, the ALJ determined at step four that Harless

was unable to perform his past relevant work. (Tr. 14.)  The ALJ then concluded at step five that

Harless could perform a significant number of other jobs within the national economy, including

hand packager, conveyor tender, and machine feeder. (Tr. 15.)  Therefore, Harless's claim for

SSI was denied. (Tr. 15.)

### C.  The ALJ's Credibility Determination Will Not Be Disturbed

Harless's sole challenge to the Commissioner's final decision is that the ALJ improperly

discounted the credibility of his subjective symptom testimony.  Harless's challenge is ultimately

unpersuasive, and thus the ALJ's credibility determination will not be disturbed.

Credibility determinations are the second step in a two-step process prescribed by the

regulations for evaluating a claimant's request for disability benefits based on pain or other

symptoms. 20 C.F.R. § 416.929; *Williams v. Astrue*, No. 1:08-cv-1353, 2010 WL 2673867, at

*9-10 (S.D. Ind. June 29, 2010); *Behymer v. Apfel*, 45 F. Supp. 2d 654, 662 (N.D. Ind. 1999);

SSR 96-7p.  First, the ALJ must determine whether there is an underlying medically

determinable physical or mental impairment—that is, an impairment that can be shown by

medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be

expected to produce the claimant's pain or other symptoms. 20 C.F.R. § 416.929; *Krontz v.*

*Astrue*, No. 1:07-cv-00303, 2008 WL 5062803, at *5 (N.D. Ind. Nov. 24, 2008); *Williams v. Chater*, 915 F. Supp. 954, 964 (N.D. Ind. 1996); SSR 96-7p.  If the record does not allow the ALJ to make such a finding, then that ends the inquiry, for a finding of disability cannot be made solely on the basis of the claimant's symptoms, even if they appear genuine. SSR 96-7p.

If, however, the medical evidence shows the existence of an underlying impairment that could be reasonably expected to produce the claimant's symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-7p; *see* 20 C.F.R. § 416.929(c); *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994); *Walker v. Astrue*, No. 4:09-cv-44, 2010 WL 1257441, at *5 (S.D. Ind. Mar. 25, 2010); *Bellmore v. Astrue*, No. 4:08-cv-94, 2010 WL 1266494, at *10 (N.D. Ind. Mar. 5, 2010).  "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p.

Because the ALJ is in the best position to evaluate the credibility of a witness, her determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), her determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning

9

rather than merely the demeanor of the witness . . . .").

Here, the ALJ concluded that Harless had an underlying medically determinable physical impairment that could reasonably be expected to produce his alleged symptoms. (Tr. 13.) Accordingly, the ALJ did not end her inquiry after step one, but proceeded to step two of the credibility determination process to evaluate the functionally limiting effects of Harless's alleged symptoms to determine the extent to which they would affect his ability to do basic work activities. SSR 96-7p; *see also* 20 C.F.R. § 416.929; *Herron*, 19 F.3d at 334.  In doing so, the ALJ considered the various factors prescribed by 20 C.F.R. § 416.929(c), ultimately concluding that Harless's statements concerning the intensity, persistence, and limiting effects of his symptoms were not persuasive to the extent that they were inconsistent with the assigned RFC. (Tr. 13-14.)

In assessing the credibility of Harless's complaints, the ALJ stated that there was "nothing in the medical evidence of record to support the claimant's allegations that he needed to lie down and rest during the day." (Tr. 14.)  Harless challenges this statement, emphasizing that the November 2006 evaluation completed by Park Center reflects that he "copes [with his emphysema] by knowing his limits, taking breaks when he needs to, and lying down and taking a nap if he has to between working." (Tr. 227; *see also* Tr. 221.)

This evidence, however, does little to undermine the ALJ's observation that the record is, for the most part, devoid of any medical evidence supporting Harless's purported need to lie down and nap during the day.  The statement that Harless points to is his self-reported limitation to a mental health examiner about the effects of his emphysema.  Of course, "medical opinions upon which an ALJ should rely need to be based on objective observations and not amount

10

merely to a recitation of a claimant's subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

As the ALJ accurately observed, Harless has not produced any medical opinion that indicates he needs to lie down and nap during the day due to his emphysema. Rather, Dr. Kancherla stated that Harless's physical exam was "normal," and the state agency physicians opined that he did not have a severe physical impairment. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports [his] claims of disability."). Of course, an ALJ is entitled to consider the objective medical evidence, or lack thereof, as a factor in assessing credibility. *See* 20 C.F.R. § 416.929(c)(2); *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Smith v. Apfel*, 231 F.3d 433, 439 (7th Cir. 2000) ("[A]n ALJ may consider the lack of medical evidence as probative of the claimant's credibility."); *Crawford v. Astrue*, 633 F. Supp. 2d 618, 633 (N.D. Ill. 2009) ("[A]n ALJ may properly discount portions of a claimant's testimony based on discrepancies between [the c]laimant's allegations and objective medical evidence."); SSR 96-7p. In fact, at the hearing Harless suggested that his increased energy in the evenings for walking his dog up to twelve blocks and staying up until between 1:00 and 3:00 a.m. might simply be because he has his "days and nights mixed up" or is a "night person." (Tr. 29-30.)

Harless also points to the Personality Assessment Inventory ("PAI") administered at Park Center, which the ALJ failed to specifically mention, as evidence of his need to lie down and rest during the day. The PAI results indicated that he is likely to suffer from disturbed sleep patterns and fatigue and have little energy or enthusiasm for concentrating on important life tasks. While

the "marginally valid" PAI test results may suggest that Harless is likely to suffer from such symptoms, it does little to evidence that these symptoms actually rise to the level of necessitating that he lie down and nap throughout the day. *See Hodges v. Astrue*, No. 1:09-cv-00216, 010 WL 3717256, at *9 (N.D. Ind. Sept. 14, 2010) (explaining that the relevant inquiry is whether the claimant's pain "was of a disabling severity" during the relevant period, not the diagnosis that he was assigned); *see generally Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Moreover, earlier in his decision the ALJ considered several other factors identified by 20 C.F.R. § 416.929(c)(3), including Harless's activities of daily living and the treatment he received. (Tr. 12-13); *see generally Buckhanon ex rel. J.H. v. Astrue*, 368 Fed. Appx. 674, 678-79 (7th Cir. 2010) (unpublished) ("[W]e read the ALJ's decision as a whole and with common sense."); *Secrest v. Astrue*, No. 1:09-cv-708, 2010 WL 2071360, at *5 (S.D. Ind. May 21, 2010) (same).  As to his daily living activities, the record reflects that while Harless may need to rest intermittently to catch his breath, he nevertheless is able to perform his household chores independently, including walking his dog up to twelve blocks and mowing his lawn. (*See* Tr. 19 (""[I]f I mow the yard, I got to stop a couple times. . . .  Sometimes I got to stop and rest when I walk the dog.").)  In fact, in October 2008, Harless told Dr. Hess that when taking his medications he only experienced "a little bit of shortness of breath" once or twice a day after activity. (Tr. 244); *see Schmidt*, 395 F.3d at 746-47 (considering claimant's performance of daily activities as a factor when discounting claimant's credibility).

The ALJ also considered that Harless had not required ongoing psychiatric treatment or counseling for his depression.  The ALJ is entitled to consider the types of treatment, or lack thereof, that a claimant has undergone when determining that claimant's credibility. *See* 20 C.F.R. § 416.929(c)(3) (considering a claimant's use of medications and treatment measures as two factors in analyzing claimant's subjective symptoms); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (finding that claimant's subjective complaints of disabling pain were not entirely credible where the claimant's treatment was "routine and conservative"); *Ellis v. Astrue*, No. 2:09-cv-145, 2010 WL 3782265, at *20 (N.D. Ind. Sept. 30, 2010) (affirming the ALJ's discounting of claimant's complaints of debilitating fatigue given the discrepancies between her self-reported symptoms and the lack of treatment for the purported condition); SSR 96-7p.

Moreover, the ALJ did indeed credit Harless's subjective symptom testimony to some extent, acknowledging that his depression and emphysema were severe impairments. Accordingly, to accommodate his emphysema, the ALJ restricted Harless from performing work that required a fast pace or exposure to pulmonary irritants or extreme temperatures.  The ALJ also accommodated Harless's moderate deficits in social functioning arising from his depression by limiting him to work that involved no more than brief and superficial contact with supervisors and co-workers and no contact with the general public. *See, e.g.*, *Vincent v. Astrue*, No. 1:07-cv-28, 2008 WL 596040, at *16 (N.D. Ind. Mar. 3, 2008) (affirming ALJ's credibility determination where he discredited the claimant's symptom testimony only in part).

In sum, the ALJ adequately considered the credibility of Harless's subjective symptom testimony in accordance with the factors identified in 20 C.F.R. § 416.929(c) and ultimately

13

determined that they were not of disabling severity.  In doing so, the ALJ adequately built an accurate and logical bridge between the evidence and her conclusion, and her determination is not "patently wrong." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000); *Powers*, 207 F.3d at 435.  Therefore, the ALJ's credibility determination, which is entitled to special deference, *Powers*, 207 F.3d at 435, will not be disturbed.[5]

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Harless.

SO ORDERED.

Enter for this 12th day of September, 2011.

S/Roger B. Cosbey            
Roger B. Cosbey,
United States Magistrate Judge

---

[5] Harless also argued that the ALJ erred by failing to discuss the written statements of his sister and ex-wife.  Of course, an ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  "What we require is that the ALJ sufficiently articulate h[er] assessment of the evidence to assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning." *Id.* (citation and internal quotation marks omitted).  "If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required." *Id.*  But this is not such a case.  The ALJ addressed Harless's testimony concerning his symptoms and daily activities, and the written statements of his sister and ex-wife were "essentially redundant" of that testimony. *Id.*  Therefore, their statements did not constitute a separate line of evidence that the ALJ needed to address. *See id.*

14